Zionist Movement, Inc., Amanda Berman, v. The Lawfare Project, Inc. Thank you. May it please the Court, my name is Roseanne Filicello, and I am representing Zionist Movement and Amanda Berman. This appeal presents a fundamental error of law. The jury awarded joint ownership of a trademark to two non-profits who compete in the same market. This award is at odds with the principal purpose of trademark law, to avoid consumer confusion by allowing only one source for each mark in a specific market. Once a mark ceases to identify as a sole source, it actually ceases to act as a trademark, and that is consistent with U.S. Supreme Court precedent. Zionist Movement preserved its right to appeal this error by objecting to the jury instructions that led to this result, and by making this argument in its post-trial briefs. Right, but what about the fact that there was not an objection to the verdict form that allowed for co-ownership of the mark? That seems like an issue. Your Honor, we believe that the verdict form needs to be read in conjunction with the jury instructions, and it's actually the jury instructions that led to this result. But even if Zionist had not objected to the jury instructions, this Court has the discretion to vacate a fundamental error of law. This Court can simply not let it stand that two competing entities share a mark and can act as the source for a mark. But didn't you in, haven't you conceded in your reply that there can't be co-ownership of a mark? There can be co-ownership where there is a contract between the parties, an agreement between them as to how the mark is going to be used in the marketplace that identify, that allows one party or both, both allows both the parties to control how the mark is used. That doesn't exist here. It has to signify one entity. Otherwise, it's going to lead to consumer confusion. But you're not saying as a matter of law that there cannot be co-ownership. You're saying, you're listing what you say are sort of requirements for that, although I don't know that you've cited a case that says co-ownership is limited specifically to the context of where individuals have a contract delineating their roles. But it's not the case that it's contrary as a matter of law to have co-ownership. As a matter of law, if two parties are in agreement, like a band that wants to operate together as one group, that's often what you see in the law, like a musical group. They have agreed, and we have cited the cases on this in our briefing, they have agreed to act as one group. And so they share the mark. But where there's no agreement, there can be no control and no enforcement. There's no control of how that mark is going to be used. And so it is not permitted under the law for two competing entities to both have a mark. It's just too confusing to the public. The whole of, you know, Jack Daniels teaches us that the bete noire of trademark law is to avoid consumer confusion. And you will have consumer confusion by definition where two competing marks are using the same, two competing companies are using the same mark. Let me, let me ask you a question. I think it kind of relates to this. Did you argue to the jury that Lawfare had abandoned the Zionist trademark? Was that argument made to the jury? We argued, we talked about the fact that they had not used the mark as of November 2017. That was in the evidence. The judge would not let us have an instruction on abandonment. He said the case was not about abandonment. You know, his jury has shot it. I'm not asking about what the judge instructed or not. I'm asking about sometimes the court doesn't instruct on something, but it doesn't preclude counsel from making that argument. Did you argue to the jury that they stopped using the trademark or in essence abandoned the trademark? Yes, Your Honor. We did not use, we might not have used the word abandonment. I don't recall specifically, but we definitely are, we definitely argued that they had stopped using the mark as of November 2017. Okay. So my next question then is, how can you have abandoned something or stop using something you did not own? Your Honor, they, they never used it as a mark. Lawfare Project never used it as a mark. Right. It was always Zionist Movement. Zionist Movement as an unregistered entity and then as a registered entity. It was never used to identify the Lawfare Project. In fact, the judge noted that the Lawfare Project never wanted to Well, it was during the Slut Walk, right? Initially, when it was first rolled out, Lawfare's name was tied to it. It was subsequently removed because of the concern. No, Your Honor. The Lawfare Project never identified itself with Zionist at the Slut Walk. In fact, they did not want to be identified with it. They specifically did not want to. And Ms. Goldstein testified to this and that it was Amanda Berman who was always designated as the voice and the person. And also the Well, I understand that, that that was the agreement. But initially, when they went to the walk, the early sort of announcements had Lawfare's name in it, or am I misreading the record? Your Honor, respectfully, they did not go to the walk as Lawfare Project. They were always there as Zionist. No, I'm, I, that's not my question. My question is, in the announcement of the rollout of Zionist, was there any announcement that included the mention of Lawfare? They used the Lawfare Project to say, this is, this is a Zionist, this is come and join Zionist. But Lawfare Project was announced lots of things that it wasn't actually a Lawfare Project thing. But at the walk itself, they did not carry any signs that were the Lawfare Project. It was always, always Zionist. Thank you. And going back to the jury, even if you, even if you think that somehow it was waived, and we can't argue about the verdict sheet, the jury instructions here give an independent grounds for a new trial because they were so erroneous. And the law is clear that where the jury instructions are erroneous. What, what instruction specifically is, what's one of the instructions you're saying is or was erroneous? Sure. There are multiple instructions that are erroneous. One, that the judge refused to charge the jury that if a prior user ceases to use the mark in a source identifying way, or intends not to use the mark, that prior user loses its right to the mark. So to the extent that in the first announcement... So you're arguing that there was an error in failing to give what is effectively an abandonment instruction, even though my understanding of your recent response to Judge Kahn's question was that whether or not you were arguing abandonment was a little murky, I guess? It was not murky. We always argue that it must be deliberate and continuous and not sporadic or casual. That is a requirement of trademark. Trademark is acquired through use, not through creation. Anybody can create a design or a mark, but it doesn't have a trademark right unless it's used for stew at... And you think that argument is sufficient to warrant a legal instruction on abandonment to the point that it's predatory or to not have instructed? I do believe that it was required that he instruct the jury that the use had to be deliberate and continuous and not sporadic, and it had to be used in a source-identifying way. It had to be used that we wanted to be identified with that mark, not we don't want to be identified, which is the issue here. The Laffer Project did not want to be identified with the Zionist mark. It was clear they were going there as they're individuals, they use signs, Zionist. But is that question of being identified, I mean, there can be ownership of a mark without the owner of that mark wanting to be identified with it, correct? That is correct, Your Honor, but that's not exactly what we're arguing, okay, because yes, it can be an anonymous source, but there has to be a sole source. There cannot be two competing sources for one mark. That is the definition of legal of confusion for the consumer, which is what the case law really concerns itself with, with confusing the consumer. It seems like a lot of what you're saying, I'm wondering if you can make the distinction for me of between ownership of a mark and trademark infringement, because those don't, they're not exactly the same issues. If trademark infringement, you're talking about multiple marks and sort of one causing confusion with the other. Ownership of a mark, which is what this case is involved, seems very different to me. Yes, this case actually involved both issues down below. So ownership, you acquire ownership of a trademark through use, and it has to be a pertinent to a company or a service. So you are, the mark identifies the source of the service or the good. Without having the entity itself that's providing the service or the good, there is no, there's no trademark. It has to be a source identifying way. There can be, you know, slogans or things that are not source identifying, and that's not a trademark under the law. That is different from saying, once you have a trademark, if someone else is then using it in a way that is also trying to be in a source identifying way, that's infringement. So, and I'm not sure if I'm answering your question specifically. I'm trying to understand what the question is. But the issue here was it was used by Zionist movement as an unregistered entity. Ms. Amanda Berman then registered Zionist movement as a separate entity. Lawfare Project was aware that that was registered as a separate entity, that the name of the entity is Zionist movement, that she was using that mark. She then registered that mark. There was no objection submitted to the USPTO to the mark being registered in the name of Zionist movement. And then when she left Lawfare Project, they knew she was leaving to go work at Zionist movement full-time. There was no objection then. Objection only came after, in 2019 and then later, and they didn't file a petition to cancel the mark until 2020. So there was no objection to Zionist movement existing, Zionist movement using Zionist, until all of a sudden, two or three years later, after it became something and became successful. We believe this was really a bad faith. The jury instructions, I want to get back to the jury instructions that we believe were improper. One of the main things that was improper about the jury instructions was the overall dissolve of them in that the suggestion that one can acquire a trademark, that an entity acquires a trademark by its employee's use. I think it's fascinating, but it would be really helpful to me, at least, if we could just go through, we have number one error on jury instructions is a failure to charge abandonment or failure to charge effectively abandoned, continued use, right? Continuous use. Can you give us sort of a bullet list of the specific errors? I understand you may also be making an argument that collectively there were errors that, but if you can give us sort of a list and then you can, we're over time, I'll defer to the presider how she wants to proceed, but that would be helpful to me. Okay. Thank you. The trial court improperly charged the jury that the Lawfare Project could obtain ownership of the trademark via Ms. Berman's use of the mark simply because she was an employee, even though she was using the mark as a separate entity and that she had the right to do so under her employment agreement. The trial court also improperly charged the jury that it could consider that the Lawfare Project had given Zionist movement a license. That was improper because the court noted that there was no contract, there was no agreement, there was no contract over that supposed license. And under trademark law, a license without conditions is what's called a naked license. And under trademark law, that is an abandonment to the extent that there – it's not a claim of trademark ownership. It cannot be a claim of ownership because without conditions, you're just – you're not maintaining control over the use of the mark, which is essential for trademark law. The other jury instruction that we take issue with is that the trial court failed to properly charge the jury what specific activities give rise to legally enforceable trademark rights. For instance, the – we asked the court to strike the sentence the record shows that the word Zionist was generated by Lawfare's PR company because that's not legally relevant. And we also asked to add a cautionary instruction that one acquires a trademark right through use in a source or quality-identifying way in the market, which is how trademark rights are acquired under the law, and the court refused to provide that instruction. We think that was an essential error here. We also believe that the trial court improperly instructed the jury as to the burden of proof. As we describe in our opening brief at pages 36 and 37, the jury came back during deliberations and was confused as to how the presumptions and the court gave a very confusing response that we did not have an opportunity to object to because the jury was then present, in which he basically said that whether the response is Lawfare Project, Zionist Movement, or both, the requirement for proof is the same for all three, which the jury then – the foreman then asked, what about C? And he just said the same. And it was very confusing. And at the stay conference, the motion for – we made a motion to stay enforcement pending appeal, the judge even recognized that the jury's decision as to both did show a certain, you know, equipose. Like, maybe they didn't actually overcome the presumption. You have to remember, Zionist Movement was a registered trademark, had not been objected to at all, and was operating and, at that point in time, had a presumption of exclusive ownership of the mark by way of the registration. And if the jury came back with both, that suggests that they had not overcome the burden that they had for a preponderance of the evidence to show that the ownership was somewhat belonging to Lawfare Project. Okay. All right. Mr. Pelliccillo? Yes, Mr. Pelliccillo. Thank you. Yes. You've got some rebuttal time. We'll hear from your adversary. Thank you. Thank you, Your Honors. Good morning, Your Honors. Aaron Solomon from Oved and Oved, LLP, on behalf of the Lawfare Project, Inc. May it please the Court. Your Honors hit it squarely on the fact that they don't like that the jury's unanimous verdict was an outcome that they expressly bargained could be the outcome of the case when there was a verdict sheet that says both could own the trademark, they didn't object to it, and they didn't raise it in their 50A motion, which means it's waived. Even if it wasn't waived, what they really want here is not to take issue with any errors of the district court. They just want a mulligan because they don't like what happened to lower court. So how is this going to work, with you all sharing this? The same way it works when, like in the case that we have when two bandmates or a former bandmate still owns the trademark in the band name. The same way it works when Ringo and Paul go out and they say, I'm here for the Beatles. It'll be organically done. Either there won't be confusion or they'll organically figure out a way to distinguish themselves as the real Zionist, the original Zionist, the progressive Zionist. However they want to do it, it's not for the court to fashion that remedy because this is the bed that they chose to be in and it's permissible. It's not illegal. It took them until a reply to admit that it's not illegal. You can have co-ownership of trademarks. And all the cases they cite to about infringement, it's not an infringement case when you're both co-developers, co-owners, co-creators of the mark. What did they get mad at? That our client said on the website, we incubated, founded, and funded the mark? That's all true. And the fact is the first part of their appeal is that the evidence of the jury's verdict was against the weight of the evidence. What was the evidence? One didn't raise it at the charging conference, but what was the evidence? That we expended funds hiring a PR company to create it. We curated the message. We helped design the T-shirts. We sold the T-shirts. We made a website. The T-shirts were sold through. We curated what was going to be said at the rallies and the marches. We went to the rallies and the marches to address Your Honor's point. It was on page 4355 and 4390 of the record when the initial rollout of the Zionist mark is launched and they say everyone come to the slot walk. The e-mail is sent by Ms. Berman from her Lawfare account. Ms. Goldstein, the president of Lawfare, edits it to say you have to put in something that this is consistent with our message. And it then goes out with the logo of Lawfare on it, and they say, as civil rights advocates, the Lawfare Project fights for equal protection under the law, which is in response to Ms. Goldstein from Lawfare saying the e-mail needed to include, quote, a sentence about why this falls naturally within Lawfare's mission statement, that this is a civil rights issue. That's the appendix at 4390. On top of that, Ms. Berman admitted in response to District Judge Hellerstein's questions, so before September 2017, Zionist was considered a Lawfare Project? Answer, yes. There was an e-mail shown to the jury where Ms. Berman says, quote, this is definitely a project of Lawfare. On top of that, we were stopped from putting more evidence in because the judge thought we were pounding the point. That's in the record, A2997. And there's e-mails from Ms. Berman in 2018 and 2019 saying she wants to divorce the trademark from Lawfare. Well, you can't get divorced unless you're married. So they were still together, co-owners, by their own admission, by Ms. Berman's own admission in 2019. Her issue regarding the jury, before I get to jury instructions, let's discuss, I think Your Honor's have it, this is not illegal as a matter of law. It may be inconvenient, it may not be ideal, but it's permissible. It could be destructive, though. As Judge Hellerstein, I think he went on about several cases he had where it was a similar result and involving, one was a bagel company. HH Bagels. And they both went bankrupt trying to own the same trademark. Hopefully that's not the case here, Your Honor. And this is, I mean, both causes both are non-profits seeking to do good. But yes, it could be a problem. But that's for them to figure out when they decide that's what the outcome of the case could be. And the jury said you both own it. So if Ringo and Paul can't figure it out together, they'll have to figure out a way to make people know which concert they're going to. I think ELO did it for a while with Jeff Flynn's orchestra. But the reality is it's not illegal. And regarding the jury instructions, one abandonment, you can't simultaneously argue that you owned it from the beginning and lawfare didn't, but also that we abandoned it. We either had it or we didn't have it. The jury recognized there was a discord there. But they also didn't ask for an abandonment charge and never objected to jury instruction on including an abandonment charge. The issue regarding licensing, they're just wrong. You can have an oral license of a trademark, and that makes it revocable at will. And it doesn't even matter because the jury didn't find that we owned it and licensed it. The jury found we both owned it. So licensing doesn't matter. Abandonment doesn't matter. And that's licensing. That's abandonment. Do you agree that if the jury, it didn't happen here, but if the jury had gone down the interrogatory and found you both co-owned it, lawfare and Zionist, Inc., co-owned the trademark, but then lawfare infringed on the trademark, would we then have an inconsistent verdict? Yes, you would, because you can't be found to – two people own a trademark. One can't infringe the other. That's part of owning the trademark. I can use it as I want to, and if you don't like it, I'm sorry. So the case that we've cited in our brief is that when two parties own a trademark, you can't sue for infringement. So that would have been a problem if that happened. The other issue they take with the jury instruction is – and this in their paper is more than their argument – was that District Judge Hellerstein led the jury astray by making it all about Ms. Berman's employment, and he coined the term employment for hire – trademark for hire. He used the term outside the jury's earshot. And while that's not a technical term, when you're working under your boss's direction – and Ms. Goldstein was Ms. Berman's boss – when you're working under your boss's direction and being told, include this in an e-mail, do this, you don't own the  We actually have a case from, I think it's Florida, where you had somebody who worked for a non-profit, developed a trademark under their work for the non-profit, and then went out and trademarked it themselves. That was not allowed. So the reality here is that you had a company that spent money, time, effort, energy, expense, curating a mark, developing a mark, deciding how it's going to be used, having a website that sells things through it, using it, and then one of its employees went out on their own. The trademark application with the TTAB was filed – with USPTO, excuse me – was filed without our knowledge, and then we filed a cancellation proceeding. And then they sued us in district court. Well, I thought it was filed with knowledge, just not knowledge that only Zionist was listed as the owner. That's correct. That's correct. I mean, she did notify Lawfare on applying for this trademark. And were funds from Lawfare used to apply for the trademark? Well, Lawfare – I don't know if they were used to actually apply for it. But when it was originally discussed who's going to be the client, Lawfare says, we will be the – Lawfare will be the client. No objection from appellant to the – what are you talking about? This is my trademark. But I thought the record was that there was notification that a trademark would be obtained, but that Lawfare's position is it wasn't aware that it would not be listed as the owner. Correct, Your Honor. That's right. And the date that it was listed at first use was back to the slot walk in August of 2017 when Lawfare did the rollout. Regarding the balance of the appellant's arguments regarding apportionment of attorney's fees for copyright, our copyright claims were withdrawn with prejudice. They don't have a single case where withdrawing your claim with prejudice voluntarily means that you've lost the case. All their cases are cases in which somebody had their claims dismissed or their claims were found frivolous or their claims were dismissed and then later found frivolous. That wasn't the case here. And defending your own copyright that you registered, paid to register, and which they're still using, and which they're using. They brought the bags to court with our copyrighted pictures on it. They're still using it. So we withdrew it to make the trial, which was already a long trial for this topic and for a nonprofit to be forced to bear more streamlined. But you don't get attorney's fees because of it. They're discretionary. And the court properly exercised its discretion and said you're not getting attorney's fees. A million dollars in attorney's fees when they only had, I think it was like $8,000 of bills that were actually attributable exclusively to the copyright matter. I have a question of just clarification. On the issue of spoliation. Yes. In fact, the documents were produced just late. My understanding is we weren't counseled then, so forgive me. But my understanding is they were produced, they were late, and what was available was produced. And what they didn't have, they couldn't produce, so they didn't have it. It was a gentleman's e-mail account. It's a nonprofit, so these people aren't coming to work full-time. So it was his e-mail account. What was produced is what was available. What wasn't produced was not available. But was it the sanction was for lateness, not intentional? Was there a finding by the district court that the lack of the availability of the discovery was in bad faith? In other words, the spoliation was with intent to deprive your opponent of the documents. Was there such a finding? I don't believe it was intent to deprive. He wasn't happy. So this falls under the reason I'm asking is under Rule 37E, 1 or 2. Does it fall under 1 or 2? Because the remedy for spoliation varies whether it's intentional or not. Right. So my question is a simple one. Did the trial court make a finding, and I'll ask your opponents to un-rebuttal, a finding that the spoliation was intentional with bad faith? I don't believe that they did, Judge. Okay. In any event, at the end of the day, he finds that there's no need for an adverse inference charge. He fines us $20,000 for a nonprofit like this. It's not the biggest nonprofit in the world. It's a lot of money. But that's because their bills that they put in, one, they said that under 37, attorney's fees were mandatory. They're not mandatory when the discovery dispute is a split. It's not a 100% one side's a winner. They're not mandatory. Number two, they changed their billing rate when they submitted their bills to the judge to get their attorney's fees. They went up from $600-something an hour to $900-something an hour, even though they previously submitted bills that had, I think it was a 52% lower rate. They sought to recover more fees than were expended in the motion, which is what the judge directed. If you could file what was attorney's fees were incurred in connection with the motion, not your attorney's fees with the whole case. And it was a 51% increase in the billing rate. I'm sorry. And for all those reasons, he gave them a $20,000 attorney fee sanction. But there was no reason for an adverse inference at the trial level. One, he's entitled to change his mind. He's a district court judge. And what they were seeking to have the adverse inference be, they never raised at the charging conference, which is when the appropriate time to raise it is. So for all those reasons, what they seek here is to just have a redo. It's not illegal. It may be inconvenient. But it's what the jury unanimously concluded, and it's a result they bargained for. And if we're okay to live with it, it's not ideal for us either. That's where we are. Thank you, judges. Let me ask you one question about the fees on the copyright. Yes. You're right that this is an abusive discretion standard. The question is, based on the record, it looks like the district judge didn't – that his decision didn't turn on sort of the discretionary factor, but turned on his belief that they were not a prevailing party. Right? So we don't – in that point, if that – if we find that's an error of law, that they could be a prevailing party, what do we do with that on abusive discretion review? It has no consequence to the outcome, because even under Fogarty and under – pardon my pronunciation – Kierstang, under both those cases, there would be no attorney's fees that would be warranted here. We have a – and our infringement claims are reasonable. We paid for a decreational mark. But we should take that – the question is, should we take that next step ourselves? Let's say, hypothetically, we say, actually, they might have been prevailing parties, so the district court needed to then take the next step and consider whether they were appropriate. He still could have said no. Correct. Right? But should we have him do that next step, or should we take that next step? We prefer you to take the next step, just to make it faster. But if it's required by this Court, the next step is our claims are objectively reasonable, because we control – we not only paid for the creation of the copyright, but we actually bargained for the control of it. And we do have input, which Ms. Goldstein did input. I want these changes. I want this kind. I want that kind. She's changed things around, so she'd at minimum be a co-creator. She is instructing them to put a copyright label on all the goods, and the person who creates the artwork agrees to do so. They don't write back and say, but we own the artwork. You're not putting a copyright on this. It's our copyright. The motivation for filing the claim was to protect the copyright. It wasn't frivolous. And the case law, and I'm quoting here from Lucan, is protection of one's own copyright constitutes permissible motivation to file a copyright infringement case. We have a filed copyright. No one's objecting to it.  So that's the merits of the fee award. Correct. If Your Honors want to address it. And on top of all that, certainly appellant can't have an issue with it, because they definitely don't own the copyright. So the imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purpose of the Copyright Act. There's no reason for there to be a fees awarded against us in this case. And if Your Honors want to take on that charge to do the analysis and appropriate, that's fine by us. I don't think it's necessary, because the judge has discretion to do so. But in any event, there's no reason for awarding attorneys fees here, because they're really not the prevailing party. None of the things changed. Even if they were, our claims are objectively reasonable and discretionary. Thank you, Judge. All right. Thank you, Mr. Sullivan. We have your argument. Thank you. Thank you, Your Honors. Just quickly, a few points. Your Honor mentioned that the standard of a review is abuse of discretion on the copyright claims. But where there is an error of law, the standard is actually de novo. I'm sure you know that. And we would ask that, because the correct standard was not applied here clearly by the judge, that that needs to be reversed. Well, vacated. Vacated, yes. If we found that, if we agreed with you that the wrong legal standard was applied, we would send it back and say, apply the right legal standard and tell us what you think. Yes, Your Honor. We agree. Your Honors also noted that this may be a very destructive result, and we agree. Because this is not like Ringo and Paul, where everyone knows who they are, that they know that they both were in the Beatles. Donors will see the Zionist mark and believe that they're giving to a progressive organization, because over the years, the Zionist movement has built up the Zionist mark to mean progressive advocacy. And the Lawfare Project is not a progressive viewpoint. And donors may give to the wrong viewpoint. You're confusing donors as to where they're giving their money. Yes, it's nonprofits. Nonprofits still get trademarks and still are entitled to protect those rights. And we are very concerned about consumer confusion here. Another thing I know that the Lawfare Project mentions, that they were fined $20,000 instead of $40,000, and sort of an arbitrary decision to cut that back. They still haven't paid the $20,000. So, you know, it just goes to the bad faith involved here. That should have been paid a long time ago. It was required by the court below to be paid, and it still has not been paid. Also, I wanted to hit on one point again, that all of the things that Mr. Solomon noted about the events that occurred between the Lawfare Project and Zionist, with any mention of Zionist, occurred between September and November 2017. After that point, Zionist movement was a separate entity and known to be. And the Lawfare Project did not, those funds were not used to apply for the trademark. The record is clear on this, that the trademark was registered by Ms. Berman and by Zionist movement itself. Ms. Berman also paid for Zionist movement to be registered. It had a separate board, separately run. Can I just ask you, you just referenced that kind of initial fall 2017 period. Yes. And the fact that after that there was lesser or no or what have you involvement. But that period still occurred. That was in the creation. I guess I'm not sure why that has lesser significance in your mind. Sure, because during that period, even Ms. Goldstein testified that it was known that Ms. Berman was the face of Zionist. And it was her project and she was doing this on her own time. Yes, there was some funds that were advanced. They were going to be paid back because there wasn't a connection. The only reason that they weren't paid back, and this is also in the record, is because the Lawfare Project never presented Zionist with an actual accounting of what amount was owed back. But there were funds that were paid back that were funds that they— But that lack of connection was intentional, and that doesn't—how does that relate to ownership? This gets back to the issue that Judge Lee raised early on in your argument, which is are you confusing ownership with use? Yes, publicly there was only an identification of Ms. Berman and Zionists with the trademark, but that was intentional so that lawfare wouldn't lose its funding and donors might not get upset and stop their contributions. And likewise, Zionist supporters wouldn't stop their contributions because of the association of lawfare. That doesn't mean they didn't co-own it. It just means for that lawfare didn't own it. Are you confusing ownership with use or public acknowledgment of ownership versus actual ownership? I don't think so, Your Honor, because under trademark law, use and use as a source identifier, that is ownership. That's how you acquire ownership. You don't acquire ownership by creation. You don't acquire ownership in any other way. It's only acquired through use as a source identifier. And because lawfare was never identified as a source, not that—it could have been an anonymous source, but it wasn't an anonymous source. It was Zionist movement was the source. First as an entity that was unregistered, and then as a registered entity. It was always Zionist movement that was the source of Zionist. The record is clear on that. And so because of that, there can only be one source for a trademark. There cannot be multiple. Otherwise, you lead to consumer confusion. I know I'm over time. I apologize, and I thank you very much, Your Honors. All right. Thank you. Thank you both. We will take this case under advisement.